**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| PATTY DURAND, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No. |
| | ) | _____ |
| v. | ) | |
| | ) | |
| JASON HAYES, individually and | ) | |
| in his official capacity as the Lieutenant | ) | |
| of the Georgia State Capitol Police, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF**

Having filed a motion for preliminary and permanent injunctive relief,

Plaintiff Patty Durand files this brief in support thereof, showing that she is

entitled to an injunction against the indefinite, unwritten, and geographically

broad ban on unescorted access to the Georgia State Capitol area and a complete

prohibition on access to the Public Service Commission meetings, hearings, and

events.

**STATEMENT OF UNDISPUTED FACTS**

1.      Plaintiff is an active participant in the state government of Georgia

and regularly attends the meetings and hearings of the Georgia Public Service

Commission.

2.      Plaintiff has been critical of the Georgia Public Service Commission and its officials for many years.

3.      Plaintiff regularly posts and publishes her criticisms of the Georgia Public Service Commission and its officials online. https://georgiansforaffordableenergy.org/fact-sheets/.

4.      Plaintiff previously sued a member of the Public Service Commission for blocking Plaintiff's criticisms of the commissioner's policy positions on social media.

5.      Plaintiff also founded a Georgia utility watchdog organization, Georgians for Affordable Energy, to hold Public Service Commissioners and Georgia Power accountable, represent the interests of ratepayers in utility regulatory proceedings, and to educate the public about energy issues.

6.      Plaintiff was also a previous candidate for the Georgia Public Service Commission.

7.      Plaintiff frequently meets with legislators and attends public hearings at the Georgia State Capitol area including the Georgia State Capitol itself and Public Service Commission meetings and hearings.

8.      When Plaintiff attends the Public Service Commission meetings and hearings, she formally participates, informally participates, or participates only through her attendance.

9.      On October 21, 2025, Plaintiff was arrested pursuant to a state warrant for one felony count of theft of trade secrets in violation of O.C.G.A. § 16-8-13, which alleged that, during a Public Service Commission energy regulatory hearing, Plaintiff "intentionally [took] a booklet containing confidential information owned by Georgia Power Company without permission."

10.      As bond conditions for her pretrial release, Plaintiff was required to: (1) stay away from 244 Washington Street Southwest, Atlanta, Georgia 30334 (where the Georgia Public Service Commission is housed); and (2) not contact any witnesses associated with Georgia Power or the Georgia Public Service Commission.

11.      Despite the bond conditions not affecting Plaintiff's presence at the Georgia State Capitol building (located at 206 Washington Street Southwest, Atlanta, Georgia 30334), on January 7, 2026, Plaintiff learned that her identification card was flagged by Georgia Capitol Police security upon her entering the capitol.

12.      After questioning Plaintiff, reading the security warning, and consulting another individual, the officer determined that Plaintiff required an escort and assigned an officer to accompany her during her meeting.

13. During the entire length of the meeting, the assigned officer guarded the door of the senator's office where Plaintiff was located for a meeting.

14. On January 21, 2026, the Fulton County District Attorney formally declined to prosecute the matter.

15. The Fulton County District Attorney requested that the Plaintiff's criminal history record information be restricted.

16. Following the declination of criminal prosecution, Plaintiff's bond conditions lapsed.

17. Despite this, Defendant Hayes informed Plaintiff—during a text exchange following her identification being flagged—that she was indefinitely and completely banned from all the properties operated by Georgia Building Authority on the Georgia Capitol Hill.

18. Defendant Hayes also informed Plaintiff that entering the premises carried the threat of criminal trespass.

19. Defendant Hayes also reiterated this indefinite and complete ban to Plaintiff's criminal defense attorney.

20. On February 3, 2026, Plaintiff requested written clarification of her ban, and Defendant Hayes informed her that she is only indefinitely banned from the building located at 244 Washington Street Southwest, Atlanta, Georgia

3

30334 (where the Georgia Public Service Commission is housed), under threat of being arrested for criminal trespass.

21.    Defendant Hayes added that this indefinite ban would be reviewed if, and only if, Plaintiff was elected as a Public Service Commissioner or employed in that building.

22.    Defendant Hayes informed Plaintiff that she would not be granted any permissions to attend the February 12, 2026, hearing or any of the other Georgia Public Service Commission meetings, events, or hearings in that building.

23.    Defendant Hayes further instructed Plaintiff that she is permitted to enter the other Georgia Capitol Hill properties, but only with a security or law enforcement escort—a restriction not previously imposed on Plaintiff.

24.    Defendant Hayes did not provide any criteria, standards, exceptions, or timelines for her prohibition from the premises located at 244 Washington Street Southwest, Atlanta, Georgia 30334 or the requirement that she have a security of law enforcement escort to visit the other Georgia State Capitol properties.

25.    Defendant Hayes did not provide any processes for reconsideration or removal of the special condition on escorts.

26.    Defendant Hayes only provided an undetermined review process for the ban and only in the event Plaintiff was elected to the Public Service Commission or employed in that building.

27.    The ban at 244 Washington Street Southwest, Atlanta, Georgia 30334 is indefinite in its operative duration.

28.    The special escort condition imposed on Plaintiff while entering any other Georgia State Capitol properties is indefinite in its operative duration and undefined as to process.

29.    Since she was last barred from entry in February 2026, Plaintiff has not attended any meetings, hearings, or events of the Georgia Public Service Commission on the 244 Washington Street Southwest, Atlanta, Georgia 30334 premises, for fear and belief that she would be arrested and prosecuted for criminal trespass.

30.    Plaintiff seeks to attend and participate in future meetings, hearings, and events of the Georgia Public Service Commission at the 244 Washington Street Southwest, Atlanta, Georgia 30334 premises and at the Georgia State Capitol.

31.    As soon as any prohibition is lifted, Plaintiff will immediately resume attending and participating in the meetings, hearing, and events of the

Georgia Public Service Commission on the 244 Washington Street Southwest, Atlanta, Georgia 30334 premises and at the Georgia State Capitol.

32.    Plaintiff has been burdened with a special escort condition—which is not imposed on other members of the public—whenever entering the Georgia State Capitol properties, thereby causing embarrassment, discomfort, and unease.

33.    Due to the embarrassment, discomfort, and unease imposed by this special escort condition, Plaintiff has refrained from attending at least four events at the Georgia State Capitol.

34.    As soon as any escort requirement is lifted, Plaintiff will immediately resume attending and participating in events at the Georgia State Capitol.

## ARGUMENT AND CITATION TO AUTHORITY

For the reasons stated below, both preliminary and permanent injunctive relief are appropriate in this case.

### I.    STANDARD FOR INJUNCTIVE RELIEF

Plaintiff seeks both preliminary and permanent injunctive relief against Defendant Hayes. Consolidation of such relief is appropriate here. *See Drummond v. Fulton Cty. Dep't of Family and Children's Servs.*, 563 F.2d 1200, 1204 (5th Cir. 1977) ("the consolidation [of a preliminary and permanent injunction]

represented a responsible exercise of judicial discretion in view of the essentially legal nature of the contest and the need for prompt action on this case")[1]; *Budlong v. Graham*, 488 F. Supp. 2d 1245, 1248-50 (N.D. Ga. 2006) (analyzing factors to be considered in consolidating a preliminary injunction with a trial on the merits without necessity of a hearing). By seeking consolidation, Plaintiff does not waive any rights; any matters not raised in this motion may be addressed at a later stage in the litigation.

A preliminary injunction is appropriate when the movant establishes: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction [is] not granted; (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest." *K.H. Outdoors LLC v. City of Trussville,* 458 F.3d 1261, 1268 (11th Cir. 2006); *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). As set forth below, Plaintiff meets her burden as to each of these requirements.

The legal challenge to the trespass ban and escort requirements are based on the facial validity of those bans, and is not dependent upon, nor impacts, any facts underlying Plaintiff's criminal charge or the outcome thereof. As such, an

---

[1] Fifth Circuit decisions issued before October 1, 1981 are binding in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

evidentiary hearing is not required. *See Cumulus Media, Inc. v. Clear Channel Communications*, 304 F.3d 1167, 1178 (11th Cir. 2002) ("[a]n evidentiary hearing is required for entry of a preliminary injunction only where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue") (internal quotations omitted); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1311 (11th Cir. 1998) (noting that "Rule 65 [governing injunctions] does not require an evidentiary hearing," and a hearing is unnecessary where "material facts are not in dispute" and defendant was provided with requisite notice of plaintiff's request for injunctive relief).

As explained below, the Court should grant Plaintiff's motion.

**II.   PLAINTIFF IS ENTITLED TO AN INJUNCTION AGAINST THE UNCONSTITUTIONAL AND PERMANENT BAN FROM ATTENDING PUBLIC SERVICE COMMISSION MEETINGS AND HEARINGS AS WELL AS THE UNLAWFUL ESCORT REQUIREMENT AT OTHER GEORGIA STATE CAPITOL PROPERTIES**

The criminal trespass ban at the Georgia Public Service Commission building and escort requirement at other Georgia State Capitol properties have numerous and insurmountable constitutional deficiencies. The ban and escort requirements were issued without any adjudication of illegal activity. The consequence is that government officials, without any standards, are denying permission to appear and speak for citizens who wish to engage in critical free speech activity at Georgia Public Service Commission hearings and meetings and

otherwise at the state capitol. The ban and escort requirements are of undefined duration and effectively bar Plaintiff from returning to the Georgia Public Service Commission building, its meetings or hearings, and other properties at the state capitol.

There are multiple sufficient reasons that the criminal trespass ban and escort requirements are unlawful. First, when applied to proscribe attendance at Georgia Public Service Commission hearings and meetings, the criminal trespass ban strikes at the very heart of free expression and cannot survive free speech review. Second, the trespass ban and escort requirements are a prior restraint because they prevent Plaintiff from addressing the Georgia Public Service Commission at all and require Plaintiff to remain monitored when accessing other state capitol properties. Third, the trespass ban and escort requirement give law enforcement and state officials standardless discretion as to whom to ban from the properties, hearings, and meetings, and whom to monitor. And fourth, the exclusion of Plaintiff from Georgia Public Service Commission hearings and meetings violates the Georgia Open Meetings Act.

### A. The State Capitol Properties and Georgia Public Service Commission Meetings Are Limited Public Fora

Georgia Public Service Commission meetings, to which the public has been invited to deliver public comment, and the public interiors of the state capitol building and other properties, are all a limited public forum. *Cornelius v. NAACP*

*Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567

(1985) ("a public forum may be created by government designation of a place or

channel of communication for use by the public at large for assembly and speech,

for use by certain speakers, or for the discussion of certain subjects."). They are

also both a public meeting under state law, open to all comers, and include a

public comment session available to all speakers.  *See Barrett v. Walker Cty. Sch.*

*Dist.*, 872 F.3d 1209, 1224 & n. 9 (11th Cir. 2017) ("[P]ublic-comment sessions of

the Board's meetings and planning sessions are limited public fora").[2]

### B. The Broad Bans and Restrictions on Attendance and Participation in Government Meetings and Locations Fail First Amendment Scrutiny

The indefinite ban on Plaintiff attending Georgia Public Service

Commission meetings and hearings and participating in public comments at

---

[2]     Forum analysis has been developed as a means of weighing whether the Government's interest in regulating speech activity on its property outweighs the interest of those wishing to use property for expressive activity. *See United States v. Kokinda*, 497 U.S. 720, 726 (1990); *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 800 (1985). In traditional public fora and limited public fora, "regulations of the time, place, and manner of expression which are *content-neutral*, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication" are permissible. *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 573 (1987) (*quoting Perry Educ. Ass'n. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983)) (emphasis added). In contrast, "to enforce a *content-based* exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.* (emphasis added); *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989).

those meetings and hearings does not pass constitutional muster under the First Amendment. So too is the indefinite and undefined escort requirement at other state capitol properties. These restrictions fail whether the bans and restrictions are content-based, because the bans and restrictions are not narrowly tailored and do not leave open ample alternative channels of communication.

In *Brown v. City of Jacksonville*, a district court was confronted with a motion for preliminary injunction in which a citizen who had been properly removed from an earlier city council meeting sought to overturn a ban on her attending the subsequent seven city council meetings. 2006 WL 385085 (M.D. Fla. Feb. 17, 2006). The court had little trouble finding that the plaintiff was entitled to an injunction based on the unconstitutional infringement of her speech. Regarding the requirement of narrow tailoring, the court found that:

> Banning Plaintiff from future meetings is not a restriction that is "narrowly tailored" to achieve the significant governmental interest of running the meetings efficiently, while successfully preventing her disruptive behavior. Although the City does not have to use the "most appropriate method" of restricting the Plaintiff, it should nonetheless use a directive that is more "narrowly tailored" than a sweeping ban from future meetings for months.

*Brown*, 2006 WL 385085, at *4 (quoting *Jones*, 888 F.2d at 1333). As this Circuit has directly concluded, complete bans are obviously not narrowly tailored. *See Crowder v. Housing Auth. City of Atlanta*, 990 F.2d 591, 593 (11th Cir. 1993)

11

(holding that "Alexander's complete ban was not narrowly tailored to meet her stated security concerns"). *See also Chabad-Lubavitch of Georgia v. Miller*, 5 F.3d 1383 (11th Cir. 1993) (a total exclusion of a free speech expression from the Georgia State Capitol's designated public forum space is not narrowly drawn to achieve a compelling state interest).

The rule found unconstitutional in *Brown* was more narrowly drawn than that imposed by Defendant Hayes. For one, in *Brown*, at least there was some nexus between disruptive behavior at a city council meeting and a subsequent ban from city council meetings; here, any purported trespass—for taking a document left at a meeting that was subsequently returned, and where criminal process was declined—has *nothing* to do with the ability of later commission meetings or unrelated events at the capitol to proceed unfettered. Second, a ban that is of a definite duration (*Brown)* is more narrowly tailored than one that persists indefinitely (here).

Here Defendant Hayes informed Plaintiff that her indefinite ban at the Public Services Commission building would only be *reconsidered* but not withdrawn if she were elected to the commission or employed at the building in the future. As for the escort requirement, it broadly affects all state capitol properties without any nexus to the Public Service Commission and is of indefinite duration. Any rule that bars citizens from all meetings and events at

12

the capitol or commission does not leave open ample alternative methods for speech in a constitutional sense. Again, *Brown* is instructive:

> [B]anning her from future Council meetings does not leave her with an "ample alternative channel of communication." Although the City's directive expressly allows the Plaintiff to "direct [her] communications to the City Council through emails or letters, or have her messages to the Council delivered by other persons," such alternative channels do not amount to "ample" alternatives that would be comparable to the same degree as her own passionate deliverance of her messages in person at the meetings, to the entire council or an entire council committee meeting, at the same time.

*Brown*, 2006 WL 385085, at *4; *Crowder*, 990 F.2d at 593 ("[T]he existence of an alternative forum does not provide an independent basis for restricting speech, absent a content-neutral, narrowly tailored regulation"). Compared to the plaintiff in *Brown*, Plaintiff faces a worse First Amendment violation in that she remains totally banned from the commission building for an indefinite period, effectively precluding her from speaking directly with government officials for an extended period of time, and must remain escorted at all other capitol properties, of indefinite duration, effectively banning her from advocating and participating in free speech activities at the state capitol.

Other cases dealing with banning citizens from government meetings have likewise found speech restrictions involving government meetings to be unconstitutional, including restrictions that were much more carefully and

13

narrowly drawn than the trespass warnings and escort requirements at issue

here*:*

- *Huminski v. Rutland Cty.*, 396 F.3d 53 (2d Cir. 2005) (affirming grant of preliminary injunction against "issuing or enforcing any notices of trespass against Huminski that prevent him from accessing court property where such notices are based solely upon Huminski's public expression of his political opinions so long as the expression does not disrupt or threaten the orderly performance of court business");

- *Barna v. Bd. of Sch. Directors of the Panther Valley Sch. Dist.*, 143 F. Supp. 3d 205 (M.D. Pa. 2015) (finding constitutional violation in ban of speaker from school board meeting, even after speaker challenged board member to a fight and swore at them);

- *Stevens v. Sch. City of Hobart*, 2015 WL 4870789 (N.D. Ind. Aug. 6, 2015) (finding that ban from school property of former teacher accused of child molestation was unconstitutional to extent it barred him from school board meetings);

- *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 548 (D. Vt. 2014) (finding a ban from school property to be unconstitutional where parent sought to participate in school meetings because "a

14

categorical ban on speech is not tailored at all, as it entirely

forecloses a means of communication" even in the face of online

threat by parents);

- *Brown*, 2006 WL 385085, at *6 ("This Court has found no case

   authorizing a time, place and manner restriction that limits such a

   length of time for a single disruptive incident.").

Simply put, indefinitely banning citizens from Public Service Commission

meetings and hearings—especially frequent attendees—and requiring an escort

on all other state capitol properties, is not narrowly tailored to whatever interest

the government might have in the orderly administration of its meetings and

events at the state capitol. Separately, and based on the uniquely significant

nature of a local government meeting where the public is entitled to attend and

invited to speak, a categorical ban on attendance and participation—and a

constructive one with the security escort requirement outside the commission

building—does not leave open adequate alternative means of communications.

Thus, the trespass ban and escort requirements are constitutionally offensive and

must be enjoined.

### C. The Ban and Escort Requirements Are Unconstitutional Prior Restraints

The ban on attending and participating in Georgia Public Service

Commission meetings and hearings, as well as the ban on attending other state

capitol properties without a security escort, also violate the First Amendment in that the bans act as an unconstitutional prior restraint. A prior restraint of expression "exists when the government can deny access to a forum before the expression occurs." *Bourgeois v. Peters*, 387 F.3d 1303, 1319 (11th Cir. 2004).

Prior restraint is censorship of the worst kind—it prevents expression from reaching the marketplace of ideas. *See Southeastern Promotions v. Conrad*, 420 U.S. 557, 559 (1975) ("[A] free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand"). "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002); *see also Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963) (demands by government officials which threaten potential legal sanction if one continues to speak are prior restraints, even if government officials lack arrest powers because "[p]eople do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around"); *Penthouse Int'l v. McAuliffe*, 610 F.2d 1353, 1369 (5th Cir. 1980) (same).

16

The criminal trespass ban and escort requirement are prior restraints that prevent Plaintiff's speech from occurring. *United States v. Frandsen,* 212 F.3d 1231, 1236–37 (11th Cir. 2000). The Supreme Court has written that "it has been generally, if not universally, considered that it is the chief purpose of [the First Amendment] to prevent previous restraints upon publication." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713- 14 (1931). Thus, "[a]ny prior restraint on expression comes . . . with a heavy presumption against its constitutional validity." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971); *Bantam Books*, 372 U.S. at 70 (prior restraint "comes to this Court bearing a heavy presumption against its constitutional validity"); *New York Times Co. v. United States*, 403 U.S. 713 (1971) (prohibiting prior restraint of "Pentagon Papers").

Under the prior restraint doctrine, the government cannot prohibit future expressive activity as a result of past unlawful conduct. *Universal Amusement Co. v. Vance*, 587 F.2d 159 (5th Cir. 1978), *aff'd* 445 U.S. 308 (1980) (holding unconstitutional a Texas statute which authorized state judges to enjoin the future exhibition of films by a business that had shown obscene films in the past); *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 507 (6th Cir. 2001) ("[W]here a law sets out primarily to arrest the future speech of a defendant as a result of his past conduct, it operates like a censor, and as such violates First Amendment protections against prior restraint of speech"). Such

17

rule applies with all the greater force where the past "misconduct" has not been proven (like here) and is not even rationally related to the expressive activity.

In striking down a permit ordinance requiring prior approval of the police to demonstrate in a public forum, this Circuit pronounced that "[p]rior restraints are presumptively unconstitutional and face strict scrutiny." *Burke v. Augusta-Richmond Cty.*, 365 F.3d 1247, 1255 (11th Cir. 2004). To protect speech against prior restraint, courts have established certain "procedural safeguards" to ensure a protection against undue delay that would result in unconstitutional suppression of protected speech. These safeguards that are necessary to ensure expeditious decision-making regarding censorship are as follows:

> (1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained;
>
> (2) expeditious judicial review of that decision must be available; and
>
> (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227-28 (1990).

None of these safeguards were provided to Plaintiff. Here, the unadjudicated ban and escort requirements are of indefinite duration, even now after Plaintiff's criminal process is over. Moreover, in Plaintiff's case the district attorney concluded that the materials Plaintiff had taken (and returned the same

18

day) are available to any intervenor with an interest in the proceeding before the commission and that Georgia Power (the owner of the notebook) has no way of knowing who accesses the materials when access is granted. Georgia Power relies on an honor system. And Georgia Power did not suffer any financial harm as a result of Plaintiff's conduct. While Plaintiff was required to stay away from the commission building during her criminal process, those restrictions were lifted when the district attorney declined prosecution on January 21, 2026. Now, following the end of criminal process, Defendant Hayes has implemented new restrictions of indefinite duration without any availability for judicial review. The bans cannot survive the strict scrutiny review required for prior restraints.

### D. The Restrictions Are Based on Defendant Hayes' Unbridled Discretion

The discretion of police officials, like Defendant Hayes, to grant or deny permission to speak or attend a meeting is completely unmoored from any guidelines or standards. Does any criminal charge allow the government to bar its citizens from all meetings at the Public Service Commission? Does any criminal charge require an escort to accompany citizens to every public area of the state capitol complex? The answer to both questions is no.

Instead, Plaintiff — a former candidate for and known critic of the Public Service Commission, who has previously successfully sued a commissioner for blocking her on social media after Plaintiff lodged criticisms of the

19

commissioner's policy positions—faces these indefinite and unbridled restrictions alone.

"Even a facially content-neutral time, place, and manner regulation may not vest public officials with unbridled discretion over permitting decisions." *Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1256 (11th Cir. 2004) (collecting cases). That is, "[e]xcessive discretion over permitting decisions is constitutionally suspect because it creates the opportunity for undetectable censorship and signals a lack of narrow tailoring." *Id.* (collecting cases). To survive review, a regulation or ban must contain "narrowly drawn, reasonable and definite standards" to guide decisionmaking and render the ban or restriction subject to judicial review. *Id.* (quoting *Thomas v. Chicago Park District*, 534 U.S. 316, 323–34. 122 S.Ct. 775, 151 L.Ed.2d 783 (2002)). *See also Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017) (decision with no time limit that effectively grants official unbridled discretion contravenes First Amendment); *Atlanta Journal & Constitution v. City of Atlanta Department of Aviation*, 322 F.3d 1298 (11th Cir. 2003) (en banc) (unbridled discretion to set rental fees and to choose which to grant was unconstitutional because no standards governed the fee or application criteria).

The criminal trespass ban at issue in this case is not premised upon adjudicated illegality. The ban on attendance and participation and escort

20

requirements are broad content-based restrictions on speech in a limited public forum, requiring Plaintiff to seek permission to speak to her representatives at the state capitol from police officers and officials who are possessed of no standards, and its duration is indefinite. As to the Public Service Commission building, Plaintiff has no ability to gain access to meetings and events there, likely even if she was later employed there or elected as a commissioner. The criminal trespass ban and escort requirements strike at the very heart of free expression and cannot survive free speech review.

### E.  The Ban Violates the Georgia Open Meetings Act

The mandates of the Georgia Open Meetings Act are broad, and all persons are generally entitled to attend public meetings such as city council meetings. *See* O.C.G.A. § 50–14–1; *Jersawitz v. Fortson*, 213 Ga. App. 796, 446 S.E.2d 206 (1994) (reversing grant of summary judgment and finding citizen was improperly excluded from agency meeting); *Kilgore v. R.W. Page Corp.*, 261 Ga. 410, 411, 405 S.E.2d 655 (1991) ("We must bear in mind that the Open Meetings Act must be broadly construed to effect its purposes of protecting the public and individuals from closed-door meetings.").

The Georgia Open Meetings Act mandates explicitly that "[e]xcept as otherwise provided by law, *all* meetings *shall* be open to the public." O.C.G.A. § 50–14–1(b)(1) (emphases supplied). Further, the Act provides that "[t]he public at

21

*all* times *shall* be afforded access to meetings . . . . Visual and sound recording during open meetings *shall* be permitted." *Id.* at (c) (emphases added). These mandates are in support and furtherance of Georgia's strong public policy of government transparency and accountability. *See Red & Black Pub. Co. v. Bd. of Regents*, 262 Ga. 848, 854, 427 S.E.2d 257, 263 (1993) ("[T]he policy of this state is that the public's business must be open, not only to protect against potential abuse, but also to maintain the public's confidence in its officials."); *Athens Observer, Inc. v. Anderson*, 245 Ga. 63, 66, 263 S.E.2d 128, 130 (1980) ("The purpose is not only to encourage public access to such information in order that the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions, but also to foster confidence in government through openness to the public.").

The commission meetings and hearings that Plaintiff is barred from attending are unquestionably public meetings under the Act. *See generally* O.C.G.A. §§ 50–14–1(b), 50–14–1(d). Thus, the statute requires that members of the general public cannot be excluded from such meetings and a videotape is not an adequate substitute for compliance with the statutory requirements. *Jersawitz*, 213 Ga. App. at 799. No exception to the Open Meetings Act that might otherwise allow for a closed meeting or a ban is in anyway applicable. *See generally* O.C.G.A. §§ 50–14–3, 50– 14–4.

22

### III.    PLAINTIFF IS SUFFERING IRREPARABLE HARM

The second factor for the Court to determine is whether Plaintiff will suffer irreparable harm absent a preliminary injunction. The answer is yes: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). Plaintiff is banned from the Georgia Public Service Commission building and must obtain a security or police escort around other state capitol properties. She cannot participate in a variety of free speech activities as a result of the ban and escort requirements. Thus, she has and will continue to suffer irreparable harm in the absence of an injunction. *K.H. Outdoors LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (citations and quotations omitted).

### IV.    THERE IS NO HARM TO THE GOVERNMENT AND THE INJUNCTION IS IN THE PUBLIC INTEREST

The issuance of the injunctions sought will not cause any harm to Defendant Hayes. The government "has no legitimate interest in enforcing an unconstitutional ordinance." *Id. See also Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 870 (11th Cir. 2020); *see also Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1290 (11th Cir. 2013) ("[T]he State's alleged harm is all the more ephemeral because the public has no interest in the enforcement of what is very likely an unconstitutional statute."). On the other hand, protection of free speech

23

is always in the public interest. *K.H. Outdoors*, 458 F.3d at 1272 ("there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties," quoting *Joelner v. Vill. of Washington Park,* 378 F.3d 613, 620 (7th Cir. 2004)).

## CONCLUSION

For all these reasons, Plaintiff requests that this Court consider and enter preliminary and permanent injunctions as set forth in Plaintiff's motion and this supporting brief.

Dated: June 22, 2026

Respectfully submitted,

*/s/ James M. Slater*

James M. Slater
Georgia Bar No. 169869
SLATER LEGAL PLLC
2296 Henderson Mill Rd NE #116
Atlanta, Georgia 30345
Tel. (404) 458-7283
james@slater.legal

*Attorneys for Plaintiff Patty Durand*

24