UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PATTY DURAND,                              )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )      CASE NO. 1:26-cv-3458-SDG
                                          )
JASON HAYES, individually and in          )
his official capacity as the Lieutenant   )
of the Georgia State Capitol Police,      )
                                          )
        Defendant.                        )

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY AND/OR PERMANENT INJUNCTIVE RELIEF**

Defendant Jason Hayes, through counsel, hereby responds in opposition to

Plaintiff's Motion for Preliminary and/or Permanent Injunctive Relief (Doc. 2).

**INTRODUCTION**

Plaintiff Patty Durand stole a booklet from a Georgia Public Service

Commission meeting room. *See* Declaration of Jason Hayes, ¶¶ 8-14 and

Attachments 1-4. Her bold theft was caught on camera. *Id.* The booklet she stole

bore this label: Georgia Power Trade Secrets 2029-2031 All-source RDP. *Id.* In

other words, it was plain from the cover of the booklet that what she stole was

property belonging to Georgia Power and that it contained trade secrets.

As a result of her criminal conduct, Ms. Durand is no longer permitted to

enter the building (244 Washington) where PSC meetings are held. Hayes Decl., ¶

- 1 -

15 and Attachment 4. She is permitted to enter other Capitol Hill properties, including the State Capitol, but she must do so under Capitol Police escort. *Id.*

This restriction is a reasonable security response and precaution. It is based on Ms. Durand's admitted (and video documented) criminal conduct, not her speech or viewpoint. Hayes Decl., ¶ 19. It is implemented and enforced by the Capitol Police Division, which is the arm of the Georgia Department of Public Safety that is charged with maintaining public safety and security in and around the State Capitol. *Id.*, ¶¶ 4-7, 15. As Lieutenant Hayes explains, "[t]his means the safety of all persons and building occupants (state employees, legislators, judges, other elected officials, and members of the public) and also the security of the buildings as well as the state government offices located within and the state government functions carried out within the buildings." *Id.*, ¶ 6.

Lieutenant Hayes explained the decision to restrict Ms. Durand's access to State government buildings in this way:

> 15. Following the PSC meeting on October 21, 2024 where Ms. Durand took and removed the Georgia Power booklet, I met with other members of the Georgia Capitol Police Division command staff to determine the appropriate security measures to put in place to address Ms. Durand's unlawful conduct. The command staff consists of Major Gary Langford, Captain Chris Black, Lieutenant Cory Seymour, and myself. We determined that, because of Ms. Durand's admitted and video documented theft of property from a state government building, in particular in this instance theft of trade secret or potential trade secret information from an entity that

regularly appears before the PSC, she would be prohibited from entering 244 Washington where she committed the crime and she would be required to have a security escort for all other Capitol Hill buildings.

16. **Attachment 4** hereto is a true and correct copy of the BOLO that was created to this effect. The BOLO remains in effect to this day and will remain in effect unless Ms. Durand is elected to public office or employed by a state government entity located at Capitol Square.

17. I am informed and aware that, on January 21, 2026, the Fulton District Attorney issued its written decision declining to prosecute Ms. Durand on the charge of felony theft of trade secrets on the basis that in its view Georgia Power did not take sufficient efforts to maintain the secrecy of its trade secrets. The District Attorney's written decision, however, confirmed that Ms. Durand committed a crime, stating as follows:

> That said, the evidence does establish probable cause to believe that the Defendant committed the misdemeanor offense of theft by taking in violation of O.C.G.A. § 16-8-2 or, in the alternative, criminal trespass in violation of O.C.G.A. § 16-7-21(a). The evidence shows that during the lunch break at the October 21, 2025, GPSC meeting, the Defendant intentionally took a spiral-bound notebook belonging to Georgia Power with the intention of depriving Georgia Power of its property. See O.C.G.A. § 16-8-2. The evidence also shows that the Defendant knowingly and maliciously interfered with Georgia Power's possession and use of the notebook without Georgia Power's consent. See O.C.G.A. § 16-7-21(a). Accordingly, while the evidence is insufficient to proceed on the charged felony offense, the State is authorized to proceed on these misdemeanor offenses. See GA. CONST. 1983, Art. VI, Sec. VII, Par. I (d).

- 3 -

18. As stated previously, the chief function and purpose of the Capitol Police Division is public safety and security in and around the State Capitol, and this means the security and safety of persons, building occupants, and buildings, including the state government offices located within and the state government functions carried out within the buildings. The duty of maintaining peace and order in this context includes preventing the re-occurrence of criminal conduct that threatens to disrupt the business of state government. In the view of the command staff, the limitations set forth in the BOLO for Ms. Durand are reasonable and necessary to fulfill this purpose and to ensure that the business of state government – including PSC meetings – can be conducted in peace and good order without disruption by criminal conduct.

19. The restriction applied to Ms. Durand is not based on her speech or viewpoint and in fact her speech and viewpoint are not known to me or to my knowledge to others in the Capitol Police Division. The restriction is based on the fact that she committed a crime (theft of property) in a Capitol Square building. Georgia law (O.C.G.A. § 50-16-14) expressly authorizes and empowers Capitol Police Officers to deny any person entrance into or upon, and to remove them from, any property or building of the Georgia Building Authority or the state, when the person's activities are intended to disrupt or interfere with the normal activities and functions carried on in such property or building or have the potential of violating the security of the persons therein, and also when the person's activities interfere with or disrupt the activities and the operations carried on in such property or building or constitute a safety hazard to the property or building or the inhabitants thereof. In the view of the command staff Ms. Durand's criminal activity raises these concerns and justifies the restriction.

Hayes Decl., ¶¶ 15-19.

## ARGUMENT AND CITATION OF AUTHORITY

Ms. Durand is not entitled to a preliminary injunction.[1]

"It is settled law in this Circuit that a preliminary injunction is an 'extraordinary and drastic remedy.'" *Dekalb County Sch. Dist. v. Ga. Bd. of Educ.*, 2013 U.S. Dist. LEXIS 29535, *4 (N.D. Ga. Mar. 4, 2013) (Story, J.) (citing *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985)). In order to obtain such relief, the movant must show: (i) a substantial likelihood of success on the merits of the underlying case; (ii) irreparable harm in the absence of an injunction, (iii) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued; and (iv) an injunction would not disserve the public interest. *See id.* (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002)); *see also Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001). The movant has the burden of persuasion as to all four requirements. *See United States v. Jefferson County*, 720 F. 2d 1511, 1519 (11th Cir. 1983).

As has been stated, injunctive relief "is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of

---

[1] Ms. Durand's motion also seeks a permanent injunction but to obtain that relief she would need to first succeed on the merits. *See, e.g., Hurry Fam. Revocable Tr. v. Frankel*, 2026 U.S. App. LEXIS 13150, *26-27 (11th Cir. May 6, 2026).

persuasion." *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 573 (11th Cir. 1974). Quoting Supreme Court precedent, the former Fifth Circuit noted that:

> [t]here is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing of an injunction. It is the strong arm of equity, that never ought to be extended, unless to cases of great injury, where courts of law cannot afford an adequate and commensurate remedy in damages. The right must be clear, the injury impending and threatened, so as to be averted only by the protecting preventive process of injunction.

*Congress of Racial Equality v. Douglas*, 318 F.2d 95, 98 n. 2 (5th Cir. 1963) (quoting *Truly v. Wander*, 5 How. 141, 12 L.Ed. 88 (1847)). The Eleventh Circuit has instructed its district courts to be even more tentative in issuing injunctions when, as here, the party to be enjoined is a state governmental entity:

> [e]quitable remedies are powerful, and with power comes responsibility for its careful exercise. These remedies can affect nonparties to the litigation in which they are sought; and when, as in this case, they are sought to be applied to officials of one sovereign by the courts of another, they can impair comity, the mutual respect of sovereigns—a legitimate interest even of such constrained sovereigns as the states and the federal government . . . [T]here is not an absolute right to an injunction in a case in which it would impair or affront the sovereign powers or dignity of a state . . . .

*McKusick v. City of Melbourne, Fla.*, 96 F.3d 478, 487-88 (11th Cir. 1996).

A showing of irreparable injury cannot be presumed, and this is so even where (unlike here) there is a violation of constitutional rights. *See Siegel v.*

*LaPore*, 234 F.3d 1163, 1177-1178 (11th Cir. 2000) (*per curiam*). In all cases, the moving party instead must present facts that show a "real and immediate" threat of substantial, irreparable harm before a federal court will intervene. *See, e.g., O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (explaining that "[t]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical'") (citation omitted). An irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel*, 234 F.3d at 1176.

Finally, it is fundamental that on a motion for a preliminary injunction the movant must satisfy its burden with evidence, not unsupported or unsworn allegations or promises as to what might be proved at trial. *See, e.g., Winter v. Nat. Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (referring to the "scientific studies, declarations, and other evidence in the record"); *and see also All Care Nursing Serv., Inc. v. Bethesda Memorial Hosp., Inc.*, 887 F.2d 1535, 1537-39 (11th Cir. 1989).

As set forth below, Ms. Durand's complaint and motion do not show a constitutional violation, her motion does not show a likelihood of success on the merits, and she fails to meaningfully address (let alone present evidence on) the three other prerequisites for injunctive relief.

**A. Ms. Durand Has Not Shown by Evidence That There Is a Substantial Likelihood That She Will Succeed on The Merits of Her Claim**

Ms. Durand's motion argues that 244 Washington is a limited public forum and that the challenged restriction violates the First Amendment because it is not "narrowly tailored and does not leave open ample alternative channels of communication." Doc. 2-1 at 10-11. She is correct on the first point, but not on the second. To be sure, the standard has only recently been clarified by the Eleventh Circuit, and from that decision the following excerpt is instructive:

> We have long understood the commonsense point that the Constitution does not require the government to 'grant access to all who wish to exercise their right to free speech,' no matter the setting, 'without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.' *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985). Disallowing any limits whatsoever in all government spaces would often lead to chaos, and could even keep the government from fulfilling its lawful functions. But that is not a license to evade the First Amendment, which demands a close look when the government restricts speech.
>
> Enter forum analysis, which considers 'when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Id.* at 800. The government's ability to impose restrictions on speech varies depending on the nature of the forum. *See Keister v. Bell*, 29 F.4th 1239, 1251 (11th Cir. 2022); *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983). The Supreme Court has recognized four types: the traditional public forum, the designated public forum,

the limited public forum, and the nonpublic forum. *See Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215-16, 135 S. Ct. 2239, 192 L. Ed. 2d 274 (2015). Content restrictions in the first two categories are reviewed under strict scrutiny, while regulations in the latter two survive so long as they are viewpoint neutral and reasonable.

*McDonough v. Garcia*, 116 F.4th 1319, 1322 (11th Cir. 2024).

Here, as framed by the complaint, 244 Washington is a limited public forum. It is the building where PSC meetings are held. Because the forum is "one created for certain groups or for the discussion of certain topics" it is a limited public forum. *McDonough*, 116 F.4th at 1324 (citing and discussing *Rosenberger v. Rector & Visitors of the University of Virginia*, 515 U.S. 819, 829 (1995)). Supreme Court precedent makes clear that in such a forum "the government 'may impose restrictions on speech that are reasonable and viewpoint-neutral.'" *Id.* at 1328. As *McDonough* further explains, restrictions on speech in such a forum "must be reasonable in light of the purposes served by the meetings and may not discriminate on the basis of viewpoint." 116 F.4th at 1329.

Initially, the challenged restriction is undisputably not based on viewpoint. Ms. Durand does not allege or argue that it is, and Lieutenant Hayes' declaration shows that it is not.

Next, the challenged restriction is reasonable in light of the purposes served by the forum and by PSC meetings. Ms. Durand's complaint and motion focus on

- 9 -

her First Amendment rights in derogation of the rights of others who attend the forum and participate in such meetings. She stole property from a meeting participant, took it right out of the meeting place. She committed the crime in the very forum in issue, and the crime cannot be said to constitute or to be connected to any form of expression or viewpoint. Her complaint and motion make no assertion to the contrary. In fact, and of significance, her complaint and motion do not so much as acknowledge the wrong in her criminal conduct, and this if anything highlights the reasonableness of an indefinite restriction on entry to the building where the crime was committed. There simply is no assurance that Ms. Durand will not steal again.

Stated simply, Ms. Durand's unlawful conduct in the forum, and the threat or the possibility that she might engage in the same or other unlawful conduct again, make the restriction reasonable in light of the important purposes that are served by the forum and the PSC meetings held in it.

Ms. Durand's motion cites to *Crowder v. Housing Auth. of Atlanta*, 990 F.2d 586 (11th Cir. 1993) and *Chabad-Lubavitch of Georgia v. Miller*, 5 F.3d 1383 (11th Cir. 1993), but neither case advances her argument. *Crowder* addressed a ban or restriction on resident gatherings for bible study in an apartment building and did not involve the commission of a crime. 990 F.2d at 593. The Eleventh Circuit also applied a narrow tailoring analysis in that case which would not be the

appropriate standard after *McDonough*. *Id*. And *Chabad-Lubavitch* involved a content-based exclusion of a religious symbol or item from the State Capitol rotunda, again it was not a case involving criminal conduct, and in that case narrow tailoring or strict scrutiny was correctly applied because of the content-based restriction. 5 F.3d at 1387. Neither case is controlling or even persuasive here.

Ms. Durand's motion also cites to *Brown v. City of Jacksonville*, 2006 U.S. Dist. LEXIS 8162 (M.D. Fla. Feb. 16, 2006). In that case a person was banned from future public meetings based on what was described as "disruptive behavior" in the course of her presentation or comments at a prior meeting. *Id.*, *1-5. The trial court applied a narrow tailoring analysis and found the ban to be unconstitutional. *Id.*, *12. *Brown* is not controlling authority, and, in any event, it does not help Ms. Durand for two reasons. *First*, after *McDonough*, narrow tailoring is not the applicable analysis for a limited public forum. *Second*, the conduct in issue in *Brown* is categorically different from Ms. Durand's conduct. The plaintiff in *Brown* was engaged in speech or expressive activity and as part of that activity she acted in a manner later characterized as "disruptive behavior." Ms. Durand, on the other hand, committed a crime in the forum (theft of property, and from a meeting participant no less) and the crime cannot be said to constitute or to be connected to any form of expression or viewpoint. Again, her complaint and

- 11 -

motion make no assertion to the contrary. *Brown* is not at all like this case and is not persuasive authority for these reasons.

Next, Ms. Durand's motion argues that the challenged restriction is an unlawful prior restraint on speech. But this argument misses its mark completely. In its basic application, the term prior restraint refers to an order or act that forbids a person from engaging in expressive activity in the future. *See Alexander v. United States*, 509 U.S. 544, 550-551 (1993). The challenged restriction does no such thing. While it is true that "[a] prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs," *United States v. Frandsen*, 212 F.3d 1231, 1236-1237 (11th Cir. 2000), Ms. Durand cites to no prior restraint case with facts that are comparable to those here. This case does not involve a permitting scheme, or in other words a government rule or regulation that sets out to place limits on speech or expression; instead, it involves a protective security measure, taken only after Ms. Durand committed a crime in the forum, and the measure is shown to be designed to maintain security and order in the forum so that it can be used in accordance with its purpose.[2]

---

[2] Ms. Durand's motion also argues that the challenged restriction is unconstitutional because it is based on Hayes' "unbridled discretion." Doc. 2-1 at 20. This argument, like the prior restraint argument, misses the mark because that concept is taken from licensing or permitting cases. *See, e.g., Freedom from Religion Found., Inc. v. Abbott*, 955 F.3d 417, 427 (5th Cir. 2020).

Notably, PSC meetings are livestreamed such that members of the public can watch and listen to the meetings remotely. Hayes Decl., ¶ 7. And members of the public can submit comments to the PSC "on any issue before the Commission." *See* http://psc.ga.gov/public-comments/. The challenged restriction does not limit Ms. Durand's access to or participation in PSC matters by these means. And again, the question is simply whether the restriction is reasonable and content neutral, and as set forth above it meets this test. At the very least, it cannot be said that Ms. Durand has shown a likelihood of success on the merits of her claim.[3]

Plaintiff has failed to show a substantial likelihood of success on the merits.

## B. Ms. Durand Has Not Established the Remaining Prerequisites for Injunctive Relief

Ms. Durand also must show by evidence: that she will suffer irreparable harm in the absence of an injunction; that the harm suffered by her in the absence of an injunction would exceed the harm suffered to the interests that are served by the Capitol Police Division (*i.e.*, maintaining public safety and security in and around Capitol Square) if the injunction issued; and that an injunction would not

---

[3] Ms. Durand also argues that the challenged restriction violates Georgia's Open Meetings Act, O.C.G.A. §50-14-1, *et seq.*. But no case, and no part of the Act, is cited as support for the proposition that Georgia's Capitol Police Division must stand down and allow access to meetings to those who have demonstrated that they will commit crimes in the meetings. Rather than being foreclosed by Georgia law, the challenged restriction is instead expressly authorized by Georgia law. *See* O.C.G.A. § 50-16-14.

disserve the public interest. She gives scarce attention to these equally important prerequisites to the entry of injunctive relief. Doc. 2-1 at 23-24.

Initially, Ms. Durand substantially delayed in filing her lawsuit and bringing her motion for injunctive relief, and such delay militates against a finding that she will suffer irreparable harm in the absence of an injunction.[4] She pleads that she became aware of the challenged restriction as early as January or February 2026. Doc. 1, ¶¶ 23, 30, 34-35. She pleads that she wished to attend public meetings on March 5 and 6, 2026, and on May 5, 6, and 13, 2026. *Id.*, ¶¶ 52, 55. But she waited *five months* after first learning of the restriction – notwithstanding the professed interest in attending meetings – to file this lawsuit and the motion for an injunction.

"A delay in seeking a preliminary injunction of even only a few months – though not necessarily fatal – militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016). Thus, the Eleventh Circuit, its "sister circuits and district courts within this Circuit and elsewhere have found that a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id*. Indeed, "[d]elay before seeking a preliminary injunction may 'standing alone, ... preclude the granting of preliminary injunctive relief ... because the failure to act

---

[4] Ms. Durand and her counsel courteously consented to an extension of time for the submission of this response to her motion. To be clear, the delay that is referenced in the text does not include the time period allowed for a response to the motion.

sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Burger v. Hartley*, 2011 U.S. Dist. LEXIS 148990, 7-8 (S.D. Fla. Dec. 28, 2011) (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir.1995)). Ms. Durand's five-month delay strongly suggests that there is no emergency and no call for extraordinary equitable relief here.

Next, Ms. Durand has not shown that the harm suffered by her in the absence of an injunction would exceed the harm suffered to the interests that are served by the Capitol Police Division (*i.e.*, maintaining public safety and security in and around Capitol Square) if the injunction issued; and that an injunction would not disserve the public interest. These interests are important, and they are intertwined in this case, because the security function at issue is designed precisely to permit state government – including the PSC meetings and both the utility and public participation in those meetings – to function as intended in a peaceful and orderly fashion. Addressing and prohibiting criminal or unlawful conduct in state government buildings, in state government offices, and during state government functions is an interest of the highest order, and the challenged restriction was implemented to that end. Ms. Durand has not shown that her interests outweigh the significant state interests that are implicated by her own unlawful conduct.

- 15 -

## CONCLUSION

Plaintiff's Motion for Preliminary and/or Permanent Injunctive Relief (Doc. 2) should be denied for the reasons stated herein.

Respectfully submitted,

Christopher M. Carr                     112505
Attorney General

Loretta L. Pinkston-Pope          580385
Deputy Attorney General

s/ Roger A. Chalmers
Roger A. Chalmers                      118720
Senior Assistant Attorney General

PLEASE ADDRESS ALL
COMMUNICATIONS TO
Roger A. Chalmers
State Law Department
40 Capitol Square SW
Atlanta, GA  30334
Tel: (404) 458-3220
Fax: (404) 651-5304
Email: rchalmers@law.ga.gov

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1.D

I certify that the foregoing brief conforms to the requirements of L.R. 5.1C.

The brief is prepared in 14-point Times New Roman font.

<u>s/Roger A Chalmers</u>

## CERTIFICATE OF SERVICE

I certify that I have this day served the foregoing pleading with the Clerk of

Court using the CM/ECF system which will automatically send email notification

of such filing to all counsel of record.

This 29th day of July, 2026.

<u>s/ Roger A. Chalmers</u>