**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| PATTY DURAND, ) | |
| ) | |
| Plaintiff, ) | Civil Action File No. |
| ) | 1:26-cv-03458-SDG |
| v. ) | |
| ) | |
| JASON HAYES, individually and ) | |
| in his official capacity as the Lieutenant ) | |
| of the Georgia State Capitol Police, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF INJUNCTIVE RELIEF**

Plaintiff Patty Durand seeks injunctive relief against Lieutenant Jason

Hayes of the Georgia State Capitol Police for his indefinite, unwritten, and

geographically broad ban on unescorted access to the Georgia State Capitol area

and a complete prohibition on access to the Public Service Commission meetings,

hearings, and events.

In his response, Defendant does not deny the central facts—that Plaintiff

remains indefinitely subject to these restrictions, with no criteria, timeline, or

process to review these restrictions, with the exception that if Plaintiff is one day

elected to the Public Service Commission or employed in the building, that

Defendant would consider modifying the restrictions. Defendant does not

defend these restrictions as narrowly tailored, time-limited, or subject to external

review. Instead, he asks the Court to treat an unadjudicated misdemeanor charge as sufficient to justify a permanent exclusion of a former candidate from the Public Service Commission building and indefinite escort requirement around the remainder of the State Capitol. For the reasons stated in the motion and below, the Court should find that Defendant's indefinite, standardless, and unreviewable restrictions on Plaintiff violate her rights under the First Amendment and Georgia state law.

## ARGUMENT

I.     **The Complete Ban at 244 Washington Fails Even Under *McDonough***

Defendant argues that because 244 Washington is a limited public forum, the restriction needs only to be reasonable and viewpoint-neutral under *McDonough v. Garcia*, 116 F.4th 1319, 1322 (11th Cir. 2024). (Doc. 11 at 8-9). Plaintiff does not dispute that forum classification for purposes of 244 Washington but also does not concede that viewpoint neutrality is established merely because Defendant disclaims knowledge of Plaintiff's views. (*See* Hayes Decl. ¶ 19). Nor does she agree with Defendant's assertion that the restriction is viewpoint neutral.

First, Plaintiff both alleged and argued that the restriction was based on her extensive criticism of the Public Service Commission. (*See* Doc. 1 ¶ 60) ("Defendant Hayes's purpose and/or effect was to silence Plaintiff because of the

content and critical viewpoint of her speech."); (*see also id.* ¶¶ 13–18) (explaining Plaintiff's criticisms of the PSC, including litigation related to a PSC commissioner blocking Plaintiff on social media as a result of her advocacy and criticism); (*see also* Doc. 2-1 at 19–20 (arguing that Plaintiff, a known critic of the PSC, faces these restrictions alone)).

Second, simply because the government says it did not enact a requirement based on the speaker's viewpoint, does not, in itself, vitiate Plaintiff's argument that the purpose of the broad ban at 244 Washington is to prevent Plaintiff's speech critical to the current Public Service Administration's efforts.

Third, even if the restriction was viewpoint neutral, Defendant cannot show the restriction is reasonable. A restriction on speech in a limited public forum must be reasonable "in light of the purpose served by the forum." *McDonough*, 116 F.4th at 1328. A restriction with no end date, no periodic reassessment, no avenue for review, and no articulated standard for when it will be lifted is not reasonable merely because it responds to an incident; it is reasonable only if its scope and duration bear some relationship to the risk it purports to address. Here, Defendant's own declaration establishes the opposite. Defendant avers that the ban "remains in effect to this day and will remain in effect unless Ms. Durand is elected to public office or employed by a state

2

government entity located at Capitol Square." (Hayes Decl. ¶ 16). These are conditions completely outside of Plaintiff's control and unrelated to any diminution of risk. Nothing in the declaration explains why employment or election, rather than the mere passage of time, the resolution of the criminal matter, or a demonstrated absence of recurrence, is the operative trigger for review.

Moreover, through his declaration, Defendant has *once again* altered the scope of the ban. Now he says the ban will be *lifted* if Plaintiff is elected to public office; most recently he said that it would be "*under review*" if she was elected. (*See* Doc. 1-4 at 5). Now he says the ban will be *lifted* if Plaintiff is employed at any state entity located at Capitol Square; most recently he said that the ban would again be "*under review*" if Plaintiff were employed at 244 Washington only. (*See id.*). While the ban fails on reasonableness and viewpoint neutrality, its scope and confines are constantly in flux and at the ever-changing whims of Defendant.

Even in limited-forum cases, the Eleventh Circuit has held that a restriction with no time limit effectively vests the decisionmaker with unbridled discretion and is not reasonable. *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017). *Barrett* did not confine that holding to permitting ordinances; it applies with equal force to an *ad hoc* security determination like the one at issue

3

here. Defendant's brief does not cite a single case upholding an indefinite, criteria-free exclusion from a limited public forum under reasonableness review. This is because there are none.

Defendant's reasonableness argument also rests on an unsupported inference: that because Plaintiff took and returned a booklet during a recess nine months ago, she presents an ongoing risk of "re-occurrence" today. (Hayes Decl. ¶ 18). But Defendant identifies no incident, threat, or misconduct by Plaintiff in the more than nine months since the October 21, 2025 incident, no individualized security assessment, and no explanation why an *indefinite* ban is reasonably related to whatever residual risk Defendant believes exists. A restriction that persists in perpetuity, based on a single incident and unmoored from any assessment of current risk, is not reasonable; it is punitive, and punitive restrictions on access to public fora require considerably more process than Plaintiff received here.

## II. Defendant's Recharacterization of the Restrictions at 244 Washington as a "Protective Security Measure" Does Not Salvage Them

Defendant argues that the unbridled-discretion and prior-restraint doctrines apply only to licensing and permitting cases and do not reach what he calls "protective security measure[s]." (Doc. 11 at 12 & n.2). But, the doctrines Plaintiff invokes turn on function, not nomenclature: that is, whether a government official can decide, without articulated standards, who may exercise

a right to access a public forum and when. Defendant described to Plaintiff a process by which Plaintiff may contact Defendant to request an exception to enter the building at 244 Washington "after which the command staff would decide whether to grant her permission." (Doc. 1 ¶ 33.) No criteria govern that decision. That is a permit system in every functional sense. Plaintiff must seek advanced permission from a government official before engaging in protected activity, and the official's decision is unconstrained by any standard a reviewing court could apply. *See Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1256 (11th Cir. 2004) ("[e]xcessive discretion over permitting decisions is constitutionally suspect because it creates the opportunity for undetectable censorship"). Neither *Burk* nor any of the other cases cited by Plaintiff in her motion confine their holding to schemes formally labeled as "permits" or "licenses." These are all cases concerned with the same issue presented here—discretion without standards. Defendant is the one who essentially made this a permitting scheme through his officer-based evaluation of an exception to the blanket ban. He cannot disclaim it now.

Defendant's arguments on prior restraint are also equally unavailing. Defendant does not dispute that continued entry onto the properties at issue now carries an express threat of arrest for criminal trespass. (Doc. 1 ¶¶ 3, 30-32). This is a government threat of legal sanction for future conduct, communicated

informally, without any of the procedural safeguards, such as judicial review or burden on the government to justify the restraint, which are all required by the First Amendment before speech-restrictive action may become final. Defendant's response does not identify any judicial review mechanism, any defined period during which the status quo is to be maintained pending review, or any process placing the burden on the government to justify the restriction. Here there is no judicial review mechanism or any way to take the amorphous ban out of the sole purview of Defendant or command staff.

Finally, Defendant's own conduct in administering the restriction underscores its fault. First, Defendant told Plaintiff's counsel one thing about the scope of the ban, later said he had misspoken and described a materially different and narrower scope to Plaintiff directly days later. (Doc. 1 ¶¶ 32, 34). Now in response to the preliminary injunction motion, the scope of the ban has again shifted as to whether it would be lifted or simply under review pending changes of circumstances out of Plaintiff's control—her employment or election to public office. Indeed, whether Plaintiff can request exceptions, how the ban may be lifted, if ever, is all dependent on which version of the ban Defendant is operating under on a given day. The ever-changing requirements, exceptions, conditions, are not compatible with the First Amendment.

### III.   Defendant Does Not Defend His Escort Requirement

Defendant's entire argument is centered on the ban at 244 Washington. His arguments have no bearing on the escort requirement that Plaintiff must abide by to enter every other facet of the state capitol, including the capitol building itself. Defendant's response brief does not argue that the State Capitol's public areas, where citizens meet with their elected representatives, and where Plaintiff was required to be escorted, are a limited public forum subject to the same reasonableness standard as a single-purpose PSC hearing room. Nor could it credibly do so: the areas of the Capitol used for citizen-legislator meetings are far closer to the paradigm of a traditional public forum, historically open for assembly, speech, and petitioning of government representatives.

Because Defendant has not defended the escort requirement under any forum analysis, the Court should treat that argument as effectively unopposed. Even under the reasonableness standard Defendant invokes for 244 Washington, the escort requirement independently fails: it is broader in geographic scope than the underlying incident, indefinite in duration, and supported by no individualized showing of current risk. It has already deterred Plaintiff from attending at least four discrete events unrelated to the PSC, including a legislative finance committee hearing and a candidate-qualification event. (Doc. 1 ¶ 55). An escort requirement of indefinite duration, applied across an entire

government complex based on an unadjudicated incident confined to one building, is not reasonably tailored to any interest Defendant has articulated.

## IV.    An Adjudicated Allegation Cannot Justify Indefinite Exclusion from a Public Forum

The entire justification for the ban at 244 Washington and escort requirement rests on the faulty premise that Plaintiff "committed the crime." (Hayes Decl. ¶ 15); (*see* Doc. 11 at 4, 10–13). But no court has adjudicated that Plaintiff committed any crime. The felony charge that triggered the restriction was formally declined by the Fulton County District Attorney. (Doc. 1 ¶ 29; Doc. 1-3).  The District Attorney's letter that Defendant quotes at length establishes only prosecutorial probable cause for an uncharged misdemeanor. (Hayes Decl. ¶ 17).  Not a conviction, not a guilty plea, not a finding by a neutral factfinder. Defendant asks this Court to accept a prosecutor's charging assessment, on a charge that was never brought, as conclusive proof of guilt sufficient to support a permanent forum exclusion. That is exactly the due process concern Plaintiff's Complaint identifies. (Doc. 1 ¶¶ 56, 62).

This is important because the degree of process due before the government may restrict a person's access to a public forum scales with the severity and duration of the restriction. An indefinite, complete exclusion from a government building central to Plaintiff's civic and professional activity — a building she has attended as an advocate and former PSC candidate (Doc. 1 ¶ 10) — is among the

most severe restrictions the government can impose short of physical restraint. Imposing that restriction permanently, based solely on an internal command-staff determination following an incident that resulted in no conviction, no plea, and no civil or criminal adjudication of any kind, is precisely the sort of prior restraint heavily presumed against constitutional validity. *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).

Here, the booklet was returned; Defendant does not allege that Georgia Power suffered any financial harm; the District Attorney's own declination letter reflects that the state could not establish the booklet's information was a "trade secret," and Georgia Power's security practices around the document were themselves inadequate to sustain the trade-secret charge. (Doc. 1-3 at 6). Whatever justification existed for a temporary security response immediately following the incident does not, without more, justify converting that response into a permanent and standardless exclusion at the ever-changing whims of Defendant.

## V.     Plaintiff's Open Meetings Act Claim is not Defeated by the Security Statute or Remote Access

Defendant argues that O.C.G.A. § 50-16-14—a general security statute—forecloses Plaintiff's Open Meetings Act claim. (Doc. 11 at 13 n.3). He argues that accepting Plaintiff's clam, he "must stand down and allow access to meetings to

those who have demonstrated that they will commit crimes in the meetings." (Doc. 11 at 13 n.3). Not so.

As explained above, Plaintiff has not "demonstrated that [she] will commit crimes" in PSC meetings or hearings. The statute permits exclusion from state buildings "when the person's activities are intended to disrupt or interfere with the normal activities and functions carried on in such property or building or have the potential of violating the security of the personnel therein." O.C.G.A. § 50-16-14. But § 50-16-14 is infirm for the same reasons the ban violates Plaintiff's free speech and due process rights. It cannot override the specific public-access guarantee the General Assembly enacted in § 50-14-1(c) ("[t]he public at all times shall be afforded access to meetings").

And even if the statute applied, the general statute only comes into play if the activities are intended to disrupt or interfere with functions and activities in the building, or if the person has the potential of violating the security of personnel therein. There is no question that Plaintiff has never been accused of violating the security of any personnel. Plaintiff took a booklet on a desk, in the open, and returned it. She did not assault or harm anyone; she did not disrupt any meetings.

The only reasonable articulation of the statute to the facts here would be that Defendant believes Plaintiff intends to disrupt or interfere with the functions

10

or activities in the building. But he makes no showing that Plaintiff intends to interfere or disrupt proceedings in the building in the future. The blanket ban based on an unadjudicated criminal charge violates the requirement that the Open Meetings Act "be broadly construed to effect its purposes of protecting the public and individuals from closed-door meetings." *Kilgore v. R.W. Page Corp.*, 261 Ga. 410, 411, 405 S.E.2d 655 (1991).

Defendant's fallback argument, that Plaintiff's ability to attend PSC meetings and hearings by livestream or submit comment online, also fails. Georgia courts have already instructed that these substitutes do not satisfy the statute's requirements. *Jersawitz v. Fortson*, 213 Ga. App. 796, 446 S.E.2d 206 (1994) (reversing grant of summary judgment and finding citizen was improperly excluded from agency meeting by merely having access to a videotape of the meeting). Even though *Jersawitz* did not deal with livestreaming, there is a difference between being able to advocate directly to the Commission and engage with the public and elected officials also attending the meeting or hearing, versus being limited to submitting comment by email.

## VI.   Plaintiff Did not Unreasonably Delay and the Harm is Ongoing

Finally, Defendant argues that Plaintiff is not entitled to an injunction because she waited several months before filing. This argument mischaracterizes both the timeline and the nature of the harm. Plaintiff did not sit on a completed

11

grievance; she pursued informal resolution first with Defendant, consistent with good-faith efforts any citizen should be encouraged to make before suing a law enforcement officer. She first sought written clarification directly from Defendant on February 3 and February 10, 2026, had her criminal defense counsel contact Defendant directly, and only worked to file suit after it became clear that Defendant's position—an indefinite ban reviewable only upon conditions under which Plaintiff has no control—was final and would not be voluntarily narrowed. Plaintiff engaged counsel to help her pursue this, but due to circumstances outside her control related to counsel's personal matters, she could not obtain alternate counsel until the undersigned was retained in June. *See* Declaration of Patty Durand ¶ 7, attached as **Exhibit 1**.

Courts do not penalize plaintiffs for attempting to resolve disputes short of litigation, and the delay cases Defendant cites involve commercial disputes over discrete transactions, not continuing constitutional deprivations. (Doc. 11 at 14) (citing *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244 (11th Cir. 2016) (trademark)).

To sustain his argument that Plaintiff unreasonably delayed in filing suit, Defendant would need to offer something more than chronology, and would need to demonstrate prejudice. *Reed v. Long*, 420 F.Supp.3d 1365, 1379 (M.D. Ga. 2019) (disregarding laches defense to preliminary injunction where defendants "produce[d] no evidence, apart from th[e] chronology, of delay. Nor have the

12

Defendants shown prejudice."); *SunAmerica Corp. v. Sun Life Ins. Co. of Canada*, 77 F.3d 1325, 1345 (11th Cir. 1996) (Birch, J., concurring) (when determining whether delay was excusable, court should not rely solely on the time period involved but also examine the reasons for any delay)). He does neither. *Ga. Coal. for People's Agenda, Inc. v. Kemp*, 347 F.Supp.3d 1251, 1259 (N.D. Ga. Nov. 2, 2018) ("[T]he Court finds that Plaintiffs are not barred by the doctrine of laches in seeking relief because Plaintiffs' delay was excusable, Defendant will not suffer undue prejudice, and there is a limited factual record at this early stage of the case.").

More fundamentally, the restriction here is a continuing violation. Every day the ban and escort requirement remain in force is an independent deprivation of Plaintiff's ability to attend PSC hearings—including the ongoing hearings concerning Georgia Power's request to add billions of dollars in fuel costs and storm damages to its rates, (Doc. 1 ¶ 52)—and to meet with legislators without a police escort standing at the door. Plaintiff also plans to attend upcoming hearings and meetings and further engage in advocacy, but has no ability to do so while Defendant's indefinite ban remains in place. *See* Ex. 1 ¶¶ 4–6.

*Elrod v. Burns* holds that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S.

13

347, 373 (1976). That presumption does not evaporate because Plaintiff waited a reasonable period to see whether the dispute could be resolved without a lawsuit. Nor can Defendant reasonably argue that Plaintiff has no future interest in advocacy before the PSC or at the State Capitol, which is being limited or fully curtailed by his ban. (Hayes Decl. ¶ 16 ("The BOLO remains in effect to this day")).

Defendant's delay argument should be rejected.

## CONCLUSION

For these reasons, Plaintiff Patty Durand requests that the Court enter an order granting her motion and enjoining both the broad ban at 244 Washington and the escort requirement at the remaining Georgia State Capitol properties.

Dated: August 2, 2026

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater
Georgia Bar No. 169869
SLATER LEGAL PLLC
2296 Henderson Mill Rd NE #116
Atlanta, Georgia 30345
Tel. (404) 458-7283
james@slater.legal

*Attorneys for Plaintiff Patty Durand*

14